May it please the Court, Hasha Mupan for the United States. I'd like to reserve four minutes for a rebuttal. All right, please watch your clock. Counts down. This Court should grant mandamus because the District Court clearly erred in departing from fundamental principles governing judicial review of agency action. Under the guise of completing the administrative record and associated discovery, the Court has ordered an intrusive and onerous fishing expedition that serves no purpose other than to probe the mental processes of the Acting Secretary in making the decision to wind down DACA. That is plainly improper. Under the Supreme Court's holdings, recognized as well by the D.C. Circuit and this Court, the subjective motivations of the agency decision maker is not relevant and what agency decisions are judged based on their face and they either stand or fall based on the rationale provided, absent extraordinary showing of either bad faith or impermissible motive. All of that is especially true. Can I ask you, so you're making an assumption about the, I guess, the universe of additional records that they want the administrative record to be supplemented with, right? Well, our key submission is that what they're asking for is, by and large, deliberative materials and deliberative materials are not part of an administrative record. Okay, and I guess my only question is, so how do we know that? How do we know? How do we know what the character is of this larger universe of documents that they want to supplement the record with, other than you're standing here and telling us that, oh no, your honors, they consist solely of deliberative process type materials? Well, in this context, your honor, it's largely based on two things. The first is there's a presumption of regularity that when the government provides an administrative record, it's presumed accurate and absent strong evidence that, or clear evidence of an error in creating that record, the court should presume that the record is what it is. Didn't the court find, the district court find that the presumption of regularity or correctness was rebutted in this case? Yes, but only by making the exact error about the nature of deliberative materials. The court's finding is that there were all sorts of communications within the agency about the decision that weren't included within the administrative record, but all of those communications are clearly deliberative in nature. Isn't he making, didn't you produce a privilege log and he's making a case by case determination as to whether or not the deliberative processes privilege applies? So, your honor, what's critical is that the district court didn't suggest that this material wasn't deliberative process. It is true that without any briefing or argument, he summarily ruled on the balancing of whether the deliberative process was outweighed under the test for deliberative process balancing. But there was no dispute that this was deliberative material. And though it's critical is, it's not an administrative, it shouldn't be an administrative record at all. So you should never get to the balancing. For example. Wait a second, counsel. I want to address your points as you make them. So don't just. OK, so isn't there any order that the factual portion of deliberate process of materials that you claim are covered by the deliberative process privilege had to be produced? The ruling wasn't based on saying that some of these materials had factual portions in it that could be segregated. The order said that the plaintiff's purported need for these materials outweighed the government's interest in deliberation. So, therefore, under the balancing test that applies for deliberative process privileges, the qualified privilege was overborne. But there was no dispute that the materials at issue were deliberative. It wasn't that there was some factual component. And that makes perfect sense in this context because the decision isn't a factual decision. The rationale that. Which decision? The acting secretary's decision. The acting secretary didn't wind down DACA based on some factual finding, based on some evidentiary showing. It was based on a legal policy judgment that there was serious legal risk that DACA would be invalidated. There is just no factual findings that would be relevant to that. The entire analysis. Factual material. He didn't say factual findings. He said. Right. Or factual materials. The question is whether there is a serious threat that it would be invalidated based on the Fifth Circuit's rationale and the attorney general's opinion. There's just no underlying factual determination there. And if you look at what the district court asked for, the district court asked for things like, did other lawyers disagree with that legal judgment? Well, yes. And part of the administrative record in any agency has some generally has pros and cons and people expressing different viewpoints before you get to the point where the decision maker makes the decision. But not on a question of law, Your Honor. It's never appropriate in the context of administrative record to say, did an adjudicator subordinate disagree with them? No more than when Your Honor is making a decision, no one asks whether your law clerks disagreed with you. It doesn't make any more difference whether an agency adjudicator subordinate disagreed with them. This is a question. It makes a difference because everything that was before the acting secretary, when she made that decision, should be part of the administrative record so that the district court can make a meaningful decision about whether it was arbitrary and capricious or actually supported by a valid legal reason. I think that's right, Your Honor. If you think about a standard agency case, like, for example, the NLRB adjudicating a dispute, no one thinks that the bench memos that NLRB commissioners get from their staff about the legal issues in the case is part of the administrative record. Except if the decision is a legal one based on a reading of the law or litigation risks, then that privilege has been held to be waived, the attorney-client privilege. And so, yes, it would become relevant because if all the memos that the acting secretary received said DACA is lawful, DACA need not be rescinded, and she goes ahead and rescinds it anyway, then that would make it appear to be arbitrary. I don't think that's right, Your Honor. Let me make two points. So first of all, just as an empirical practical matter, I just don't think that is a correct assessment of how an ordinary judicial review of agency action works. The NLRB routinely issues decisions that turn on questions of law, and I'd be very surprised if they ever have their bench memos as part of the administrative record. And the reason why that's the case is because whether their legal determination is arbitrary and capricious turns on the persuasiveness of their legal rationale. Whether their clerks disagreed with them has nothing to do with whether it's sufficiently persuasive to satisfy the requirements of reasoned decision making. Let's just hypothesize, for example, that literally every lawyer in DHS disagreed with the acting secretary. If the acting secretary's legal rationale is still persuasive enough to satisfy the requirements of reasoned decision making, it shouldn't matter that her subordinates disagreed with her. And in this context, her legal rationale has been adopted by both the district court and the Fifth Circuit. So it certainly shouldn't matter that her subordinates disagreed with her. It just is not relevant to whether her rationale is reasoned and sufficient to satisfy the APA that other lawyers who are below her in the DHS or in other agencies disagree with her. That is just not what is relevant when you're assessing whether a legal policy determination is arbitrary. The district court said it looks like the only materials you've provided are those that were actually seen or considered by the acting secretary. And the standard comes from the Thomas case that I think he relied on, which clearly contemplates an administrative record that contains all documents directly or indirectly considered in the final agency decision. So that's why he and his further orders that essentially limit the documents to documents considered by anyone who gave verbal or written input to the acting secretary in connection with the decision is all supported by Thomas. Your Honor, Thomas did not involve a request for legal deliberative process materials from a subordinate to a superior officer. I don't think it is fair to read the directly or indirectly considered language to suggest that deliberative materials are included within the administrative record. That would be a revolution in administrative practice. Are you representing to the court that everything else that was indirectly or directly considered by the acting director comes within the deliberative process privilege? Are you making that representation? What I'm representing is that in the first instance, the agency has to make a decision about what the record is on which they are basing their decision in a context like this where it's informal proceedings and so the APA doesn't specify what the administrative record is. And in a context like this where the agency's decision is based on a legal policy judgment, it's not based on facts, it's not based on evidence, it's based on a legal policy judgment, I'm representing to you that we have put forward the record on which the agency decision maker made her decision. There may be facts and evidence that was somewhere in DHS that some people might have thought relevant, but it is not the evidence that the acting secretary considered in making her decision. Now, if they want to argue that that sort of stuff should have been considered, they're free to do so. We know what the acting secretary's decision was, we know what the rationale was. If they want to argue that it's arbitrary and capricious that other factors weren't considered, they are free to make that argument and we can have a debate about whether it is arbitrary and capricious. But there is no need to go beyond the record that she has put forward to defend her decision. What does the word indirectly in Thompson mean? I've struggled with that. I can't for the life of me figure out what was intended. Well, so I'll say a couple of things. So in Thompson itself, I think it's pretty clear that the reason they were emphasizing indirectly considered is because the documents at issue were documents that were letters lodged with the ALJ and then. No, no, no. It's exactly the opposite. They were not lodged with the ALJ. They were lodged directly with the secretary. Those are the documents that were being referenced, and that's why I don't see. They're not indirectly before him or her. They're directly before. With all due respect, Your Honor, I don't think that's quite right. I think if you read the case, what it is is that there were letters between the parties about settlement and they cc'd the ALJ. No, no, no. You've got it exactly backwards. It's a motion for reconsideration filed directly with the secretary. Those letters were never provided to the ALJ, but they were before the secretary, and that's why I can't figure out why would we have said directly or indirectly. But that's my point. It came up in the context of a motion to reconsider. I don't believe that they attached the letters to their motion to reconsider. They did. That's how they got lodged, directly with the secretary. My understanding was that the reason they were saying indirectly referenced is because they were considered as part of the motion to reconsider, but that they were actually initially submitted to the ALJ. You're wrong on that. Well, if I'm wrong about that. So you don't have another? Maybe you're as puzzled as I am, because I can't figure out what that word means. The other thing I will say is in a different type of case, in a case where the agency's decision turned on a factual finding and where the agency decision maker's factual findings might have been predicated on facts that were before her subordinates, I could understand why indirectly considered might be relevant. And it seems like a lot of the cases they're relying involve those sort of agency decisions. But the critical point here is that that is not this sort of decision. This sort of decision is a legal policy decision that is based on a reading of case law and litigation risk. And in that context. But wouldn't there be, wouldn't you expect there to be some sort of, and now, I mean, I was a litigator for 16 years, and I think Judge Watford and Judge Gould were litigators too, and whenever we were considering litigation risk, there would be some document that would talk about, you know, actually assessing the risk and what were the chances of this and what were the chances of that in this circuit or that circuit and what would happen when it got to the Supreme Court. What was the possible exposure in light of those risks? I mean, there seems to me there should be some document. I've now read the administrative records not much, so it's quite easy to read. But you would look for some kind of, if the decision is based on litigation risk, you would think there would be some document that actually explains and assesses the litigation risks. Your Honor, both the Attorney General's opinion and the actual decision lays out the rationale for why there's litigation risk. If the courts think that the rationale provided isn't sufficiently persuasive to satisfy the minimal burden of arbitrary and capricious review, then it can be set aside. But there's no requirement that on a legal determination like this, an agency has to provide its subsidiary legal research. No, you're right, and I think you keep, maybe we're having a problem with communication here. I'm not saying there's a requirement. It's just sort of a standard good practice when you're assessing a risk that you lay out the factors. I'm not disputing that there might well be internal agency deliberations on litigation risk that go on in more detail than these memos. The point is that that's not legally required to be included within the administrative record any more than, for example, when the NLRB issues a ruling on what the meaning of the NLRA is, they might have a five-page opinion, but they might have gotten a 25-page opinion from their clerks. Not all of that has to come into the administrative record. Shouldn't that, since your position is that it comes within one of your privileges, shouldn't that be put, the proper practice is to put it before the district court on camera so he can review it and make that determination? I mean, the district court doesn't have to just accept the administrative that, I'm sorry, the agency's representation as to what the contents of the administrative record are. So that goes back to Judge Wadsworth's first question, which I think in this context for two reasons. First of all, there's a presumption of regularity, and courts have recognized that you don't have to put all of the agency's internal deliberation on a privilege law, which would be a severe burden and intrusion on the government. And in this case, the district court didn't dispute that this material was deliberative. He just said that their purported need for it outweighed the deliberative privilege. And all of that makes particularly little sense in this context, where the basis of the decision is not a factual evidentiary one, where there's some real risk that there's going to be non-deliberative material that the agency relied on. This is a legal policy judgment where all the evidence, all the materials is likely to be exactly what we have represented it to be, which is deliberative internal advice from agency subordinates and other agencies about litigation risk from DACA. Can I ask a slightly different question? Go ahead. He wanted to save four minutes, but I'll give him a little extra time at the end, so go ahead. Okay. Just because it seems like if we talk basically maybe about half of the issues in the case, isn't the second half just the nature of the discovery? Right. That would be relevant, I think, not to this APA claim, but to the constitutional claim? Right. So that's right, Your Honor. And so on the constitutional claim, much as for APA arbitrary and completionist claims, you don't look behind an agency decision unless there's strong evidence of bad faith. So, too, on the constitutional side, when someone is challenging government's enforcement discretion, they need clear evidence of impermissible motive before they can ask for any sort of discovery. That's what Armstrong held. And under AADC, the burden is even higher in the immigration context because challenges to enforcement discretion in the immigration context are particularly problematic. And they haven't come close to meeting the high standards required by cases like Armstrong and AADC. So we think there's a parallel rule on the constitutional side that tracks the arbitrary and capricious rule on the APA side. And there are at least one or two other constitutional claims in this case, sort of due process notice type claims. And the argument I just made for that, I agree, doesn't apply. But there, the question is, what discovery do they need for their due process claim? I don't even understand what discovery it would be. And it certainly isn't the massive discovery and massive administrative record expansion that has been ordered in this case. Okay. So there's that. There's the document. And then there are – well, that's the other question I have. Are the deposition requests before us now or no? Because the – Look, so I think they are in that we have asked, as a part of our mandamus request, to have both a halt to both the expansion of administrative record and the discovery. They had tried to suggest that, well, maybe, for example, the deposition of Secretary Duke herself wasn't ripe yet. I think it's certainly ripe at this point. But tell me if something has changed since I last was apprised of this. I understood that we had a tentative decision from the magistrate judge which was being reviewed by the district court judge or no? Well, so the way timing worked out was the following. The district judge strongly signaled that he would allow the deposition of Duke, but he acknowledged it was the magistrate judge's call in the first instance. Okay. Well, the magistrate judge has now said that she would authorize the deposition. The district court hasn't had a chance to rule on that because the court's administrative statement didn't. So how could we command the district court to do anything with respect to a deposition request that it hasn't yet reviewed? That's what I'm puzzled by. Well, all I'm saying is that we've just generally asked for all depositions to be halted, depositions that already started. And I'll be making that no depositions, but certainly not a deposition of the acting secretary would be allowed. And in this context, I don't think it is too premature to say that when the district judge has already said that he would do it if the magistrate judge said so and the magistrate judge has now said so, this court can say no. Are there any other depositions that have been scheduled but not yet occurred other than the acting secretary? I believe there are several others that have been, and then there are several others that are at least either they've informed us they plan to do it or maybe even noticed, some of which have not necessarily been served, including, for example, the former White House chief of staff and former senior counselors in the White House. Okay. And just so I understand the government's position, your position is that none of those people that they wanted to pose should be allowed to be deposed? Because none of that goes to the administrative record and none of that is permissible even for their constitutional claims because they haven't come close to making the showing that the acting secretary, who is the decision-maker in this case, acted with bad faith or an impermissible motive. And therefore, under black-letter administrative law principles, her decision should be reviewed up or down on the rationale she's provided. If they're right that the rationale she's provided is insufficient, if there are other factors that she should have considered, then the result is that she either has to provide further explanation or the decision can't stand. But there is no justification for saying, because they don't think the rationale that was given was good enough, they need to have a massive discovery spree and document request to see what else might be in DHS or DOJ, let alone the White House. None of that is necessary in a case like this because you can review the agency decision on the rationale given. It's the critical distinction between, for example, Overton Park and Kemp v. Pitts. In Overton Park, the agency didn't give an explanation. In Kemp v. Pitts, they did. And so what the court said in Kemp v. Pitts was, we can review that on the explanation given. And if it's not good enough, then the decision can't stand. All right. Thank you, counsel. Good afternoon, and may it please the court. My name is Michael Mongin, and I represent the state of California. I'll be presenting argument this afternoon on behalf of all of the real parties in interest, the plaintiffs in five related cases before the district court. You just heard the federal government say that it is seeking extraordinary mandamus relief in service of the position that it can defend a decision that affects hundreds of thousands of people on the basis of an administrative record consisting of 14 documents that were already available on the Internet. In the context of this important and time-sensitive litigation, the district court acted appropriately in ordering defendants to complete the record in ways that would allow a thorough review of what, if anything, underlies the agency's decision. They're asking us to issue a writ here that is really an extraordinary and very rare writ that's issued. And they claim that at least two of the factors go their way, but the question whether the district court clearly erred is the key question, at least to me. Did the district court clearly err as a matter of law on any one of these rulings? And I think that's what needs to be addressed. That's what I think is going to be dispositive. I think that's exactly right, Your Honor, and we think that the district court's rulings were correct, but at least they do not constitute clear legal error, which is what they need to show to get mandamus relief. And let me turn directly. I heard my friend talk about black-letter administrative law. Black-letter administrative law, and this is set out by Congress in 5 U.S.C. Section 706, says that when an agency makes a decision, the reviewing court shall have the whole record. But that's for formal agency action, right, or either rulemaking or adjudication, and this is more informal rulemaking? No, Your Honor, with respect. 5 U.S.C. Section 706 is the provision that applies to arbitrary and capricious claims with respect to, yes, formal rulemaking, but also with respect to this type of informal decision-making process. And the starting point under first principles of administrative law is, yes, they get to explain the decision however they want to, but then the district court is entitled to the entire record so that it can test whether that explanation is rational, whether it's genuine. But so you heard your opponent say that the entire universe of additional documents that's out there, besides the whatever it is, did you say 14 documents or something that were produced, consists of deliberative process-type documents, right? I heard that, Your Honor, and I can't believe it. It is simply implausible that in this active decision-making process that went on for months before DHS, that all of it. Okay, that's what I first wanted to see if you agreed with that. It sounds like the answer is no, you don't. You think there are other non-deliberative process materials out there that you're entitled to have made part of the record? Absolutely. Okay, yeah, and I was just going to ask, then, what's the basis for your belief on that front? Well, let me give you some concrete examples. Although I'd note at the outset I think that the obligation is on them to serve the complete record and not on us to speculate about what might be in it, but we do know here that there are or should be some non-privileged documents. We know from the privilege log that they produced to the district court, for example, that there were quite a number of articles that the acting secretary directly reviewed. Those are not privileged, at least the portions that don't contain any deliberative notes, and they need to be in the administrative record. You mean by articles, what type? News articles, Your Honor. Newspaper articles? Yes, Your Honor. Okay. Why would those be relevant to her conclusion that there's litigation risk? Your Honor, I want to push back somewhat on the premise of your question. I don't think there's an obligation for us to prove that documents are relevant to the proffered explanation. I think they have to be all of the non-privileged information that was before the agency decision-maker. Well, let me just turn it around, and then you tell me why I'm wrong in looking at it this way. I think your opponent is right in saying that ordinarily there's a presumption of regularity that attaches and that the administrative record that's produced is deemed complete. I have seen cases, maybe they're ones you cited, maybe they're ones my law clerk found, in which it's obvious from the materials that were produced that, no, actually there are other factual-type documents that clearly were before the agency decision-maker that somehow are not in the record. And when you have a showing of that sort, then of course the court would be in a position to demand the expansion of the record. So that's where I'm trying to get a sense. What are you putting your, you know, what's your basis for saying that there are non-deliberative process materials that clearly were before the acting secretary that you say are not now part of those 14 documents? Well, Your Honor, I think what I heard defendants argue is not that there aren't documents out there that were considered in the run-up to this decision that are non-privileged. I think they acknowledge that those documents exist. They're saying that we picked and chose the documents that we think are related to her proffered explanation, which is apparently based either on a conclusion that DACA is unlawful, the attorney general's conclusion, or on some assessment of litigation risk. But that is not how it works. The standard in this circuit and in other circuits, and in fact the advice they give to their own agencies, or did until a few weeks ago when they retracted it, is that you compiled the entire set of non-privileged information that was before the agency decision maker and considered that these were indirectly, so including documents that might not have passed before the eyes of the acting secretary, but were reviewed by other people in the process. I don't think that part is right at all. I don't know what that indirectly word means in Thompson, but I don't think it means any document that came across the eyes of a decision maker. I don't think that's right at all. Your Honor, I would acknowledge that there could be debate over what indirectly means. I think the question that's before this court today is whether the district court's understanding of it was clearly legally incorrect. I'm saying that, yeah, and the district court said basically it has to include everything that any subordinate saw who gave any kind of advice, oral or written to the acting secretary. And I think that is plainly wrong. Do you have any case that supports that besides Thompson? Because Thompson does not. I mean, that's just whatever indirectly means that case does not come anywhere close to supporting that legal proposition. So do you have something else? I think that's right. We cite a case in the brief from an out of circuit district court that, that makes the point I just made, that it doesn't have to be documents that were directly before the eyes of the decision maker, the Miami nation case. But I also think it is relevant, especially when we're talking about not deciding this as a de novo matter, but whether there was clear legal error to point to the DOJ guidance that has informed what federal agencies have done for the better part of two decades. And what they say is, is it, it doesn't have to be specifically considered by the final agency decision maker. It includes documents that were prepared or reviewed or received by agency personnel and available to the decision maker, even if she didn't know about them or actually look at them. That's actually broader than what the district court did here. I think that the district court was trying to limit the scope of the record, recognizing the arguments they've made about administrative burdens. I think an argument could fairly be made that it should go deeper down into the agency, but certainly if you have the top level advisors who are briefing the acting secretary on this momentous decision, then the documents that they directly considered in preparing that advice would be part of a fair understanding of the record. And I'd note that it's not just the Thompson standard in Portland, Audubon, this court more recently put a gloss on the Thompson standard and it said documents that were before the agency. So I think any fair... Before the agency decision maker. And so I agree with you. Certainly anything that was put before the acting secretary, whether she read every line of it or not, that's not the relevant question, but it needs to at least have been put before her, not before some subordinate who just merely gave advice in the decision making process. I haven't found any case law that supports that rather sweeping proposition. It may be, Your Honor, but I don't think there's any case law firmly going the other way. And we would submit that that is a reason not to find that this is clearly legally erroneous. This is a question that could be reviewed as to the scope of the record in an eventual appeal. But I think that the process would be best served by allowing the district court to compile a complete version of, or to order the defendants to complete the record and then allow it to conduct standard arbitrary and capricious analysis, which does involve... Counsel? Yes, Your Honor. Could I interject a question? So I understand the arbitrary and capricious analysis in this context. There's a case called State Farm that I recall where the Supreme Court said there had to be a rational connection between the facts found and the choice made by the agency. So in a case like this where the agency isn't determining a lot of facts but is just making a decision about litigation risk, what are the facts found that have to be connected to the choice made? Yes, Your Honor. And let me give a direct response to that. But I would also like to note at the outset that I think State Farm says more than that. It talks about facts found on the evidence, and that was talking about airbag safety. But it also says it has to consider all the relevant factors and make a rational decision. It also says it has to consider all the factors, consider any factors that Congress wanted it to consider, not consider factors Congress didn't want it to consider. And also that the decision shouldn't run counter to the evidence before the agency. So, for example, in a case like this, what's the evidence before the agency? Your Honor, I would note that you heard the defendant earlier say that this wasn't just based on a legal conclusion. They say that it's also based on an assessment of litigation risk. And an assessment, a rational, reasonable assessment of litigation risk involving a 180-degree change in agency position would surely involve some consideration of the policy impacts and the consequences of jettisoning this program to weigh against the perceived legal threat. That information isn't entirely privileged, and that information is part of the complete record that a district court would need to have in order to apply standard principles of administrative law, including the principles in State Farm, to the agency's decision. And I do also want to emphasize there are other values that are served in having a complete record. I think that a court can, in appropriate circumstances, look at the complete record and come to a conclusion as an objective matter, not probing the mental processes of the decision maker, that the stated reason is pretextual. And that would be a basis for concluding that it's arbitrary and capricious. Let me ask you a question. How is it relevant what the materials were that were directly or indirectly considered by Kelly when he was the secretary of DHS? Yes, Your Honor. I think what the district court was doing, and perhaps I'm reading between the lines here, but was recognizing that there was an ongoing policymaking process that began on January 20 and involved Acting Secretary Kelly, or Secretary Kelly, making a decision to keep DACA in place. And then the September 5th precision memorandum represented an abrupt 180-degree change in course. And usually you want to make sure that an agency is considering all the relevant factors when it changes its mind. So the information that was before the agency when it decided to keep DACA in place in February, which was after the Fifth Circuit litigation and the Supreme Court decision that they point to, would be relevant to understanding whether the agency acted arbitrarily and capriciously. And, Your Honor, I'd just like to make a broader point here, which is the position that they're advocating for isn't just not consistent with the laws to their obligation to complete a record, but it would have dangerous and troubling implications. If an agency gets to pick and choose what documents go in the administrative record and which ones stay out, then that agency can insulate its decisions from effective judicial review. No, typically that's just the exact opposite is true. If the agency compiles an inadequate record and it doesn't, in fact, support the agency's decision, then that means we, as the judicial reviewing body, will have to vacate it and send it back. So it's usually the agency is the one that takes the risk by compiling a thin record most of the time. That might be, Your Honor. And I think in this case we would have a fair argument if we end up being stuck with an inadequate and incomplete record that it is arbitrary and capricious, and we'll press that argument. But imagine a scenario where an agency makes a decision on a cost-benefit analysis, and it decides to include all the documents about the benefits and none of the documents about the costs. That would be a way for them to insulate their decision from effective judicial review, and that is not the way that review under the Administrative Procedure Act is supposed to proceed. At a minimum, their interpretation of their obligations are not so established or supported that the district court, in essentially following the guidance that DOJ itself has pushed out to federal agencies through its Energy and Natural Resources Division, the district court, following the approach it took, did not commit clear legal error. But can I just bring you back to a question I think I posed earlier, and maybe I cut you off. I'm still struggling, though, to figure out for this type of decision, unlike the cost-benefit decision that you just articulated or referenced, for this type of decision, what are the non-deliberative documents, the non-deliberative process documents that you think are out there that should have been included? Well, I do think that, I recognize Your Honor might disagree, I do think that news articles. Not the specifics. Sure. What would be the general character? Sure. News articles, factual information, non-privileged materials that this acting secretary or her advisers received from outside the government. They have acknowledged. How about litigation risk? Well, let me give another example on that front, Your Honor. They have acknowledged that they had repeated communications, not just DOJ, but senior DHS staff with folks in the Texas Attorney General's Office. And those communications aren't privileged. And if there are written memorializations of those communications, they would have a direct bearing on the proffered litigation risk assessment rationale. Those need to be in the administrative record. And to the question that Judge Bordlaw asked a moment ago, I think that a rational assessment of litigation risk has to consider not just the perceived litigation threat, but the underlying cost to the government, to the economy of jettisoning this program. And those types of information about policy impact of DACA or rescinding DACA would have been relevant to the agency's consideration of litigation risk. And those materials aren't privileged. They should be in the administrative record as well. So, Mike, I have a question about the presumption of correctness. Irregularity of the AR that's produced by the government. What, in your analysis, was it that overcame that presumption in this case? Well, I think there are a number of reasons, Your Honor. We believe that they drew an artificial line around the acting secretary and documents that only she reviewed and that were before her eyes. And that is narrower than our understanding of what is required under this court's precedents. And certainly narrower than what the district court had told them to produce. The information, pardon me, I lost my train of thought. Your Honor, the question was going to. What overcame the presumption of correctness? Yes. And then I think that it's clear that they are asserting, as I understand the government's position, any document that is pre-decision and not already on the Internet is covered by the deliberative process privilege. That is just not consistent with the law. For example, if there is factual material in communications or memos that went to the acting secretary or senior advisors, that factual material is segregable and it needs to be in the administrative record. That's black letter law. And they have taken a position that they can unilaterally exclude anything that was pre-decisional from the administrative record. So I think based on their frank and open position as to their understanding of what goes in the administrative record, the court properly concluded that any presumption of regularity as to the completeness of the record was overcome. Can I ask you this? I mean, there is an established exception to the, you know, the administrative record being confined to the four corners of what they present. If you, as the challenging party show or make some showing of bad faith or impropriety in the decision making process. And I, it seems like you, that's kind of where you're headed, but for whatever reason, tell me if I'm wrong, you haven't explicitly made that allegation so as to trigger that exception. I'm confused as to why. Well, I think that's right, your honor. I think that very well may be where we're headed here. In the first instance, we thought it appropriate. And I think that the less intrusive step is to simply have them complete the record based on this court's cases, defining what the record should be. But you're right under Overton park. There's a line of authority saying that if it appears that there was improper conduct or a pretext that that may well be a basis for overcoming the presumption of regularity. And in that set of circumstances, it may well be appropriate to have discovery or even a deposition of a PA claims as distinct from the non APA claims. We reserve that argument and we may well press that argument, but we thought it appropriate to get the complete record of materials that was before the agency before going down that path. And that's yet another reason why it's important that we have the complete record, because we think that it may well corroborate our view that the asserted basis for this decision was pretextual. They said that it was based on a legal conclusion that was solely made by the acting secretary. But then the attorney general of the United States announced the decision. And in his announcement, he referred and relied heavily on policy considerations. And the president of the United States has said that he was the one who made the decision. And he said that he feels free to revive DACA. If Congress does Congress doesn't act before March 5th, suggesting a view that it is in fact a lawful program. So yes,  we reserved that argument and we may be approaching a situation where we would overcome the presumption of regularity. Well, can, can you address the separate, put aside the composition of the administrative record and the discovery disputes? I guess it's mainly, I don't know, the depositions and the like, can you address that part of it? Yes. And if I can just offer a little bit of background here, I understand they say in their papers that they have objected to discovery all along. And I suppose that that's true. They've stood up in court and said that they thought that object that discovery was premature, but they understood the district court's view on this. And I'd point you to pages 22 and 23 of the September 21st case management conference transcript, which is an addendum to our brief. The district court said, I think that we should have some focused discovery. And after hearing that defendants decided that they would not pursue an early motion to dismiss. And instead they said we're quite comfortable with having cross motions for summary judgment filed on November 1st. They originally proposed December 1st. So they understood that there would be discovery here. And more than that, they have made witnesses available for deposition. They could have gone to the magistrate and sought a protective order at any time. They haven't done that with the exception of the acting secretary's deposition, which I can address. And they have not gone to the district court with respect to any of our written discovery and said, we think that it's categorically inappropriate because of the nature of the claims. So it is premature at best for them to come to this court and ask you to shut down discovery entirely given the litigation choices that they've made. Now, as to the acting secretary, we were under a deadline of filing a summary judgment motion by November 1st. And we had started with written discovery. We haven't received responses to that yet. We started with depositions of more junior DHS officials. But as it was approaching November 1st, we thought it appropriate to bring this matter to the attention of the magistrate because we hadn't gotten some central information that is relevant to our claim. So that's why we filed a joint letter with the government raising it. And the magistrate did say that she thought a deposition would be appropriate given the facts as they existed at that time. But your honor is correct. The district court has not clearly ruled on this issue. It noted that in its order denying the stay. And I think it would be premature because any evaluation of the propriety of this position necessarily has to depend on the particular circumstances at the time that decision is made, including what information if any we've been able to get from other perhaps less intrusive sources. So we do think that based on the information we've received and likely perhaps based on the information we will eventually receive, it is appropriate to have a narrow and focused deposition of the acting secretary. But I just don't believe that it would be appropriate at this time for this court to rule on mandamus on a matter that the district court hasn't yet squarely addressed. There are no further questions. We would ask that the court deny the petition for mandamus. Okay. Thank you, counsel. And add a couple of minutes. Yeah. Thank you, Your Honor. Can I just ask you something that I'm a little perplexed about? It's substantive, if I may. Sure. In the June 5 letter, or September 5 letter that rescinded the DACA program, the acting secretary refers to the Texas cases as one of the rationale. And at least one of the Texas cases, the district court I think preliminary and joined the DACA program at the beginning on the ground that President Obama had not complied with the APA by following the notice and comment and rulemaking procedures. And that was the basis for that ruling. It was then affirmed in the Texas appellate court or the Supreme Court. It's plain from reading this record that the notice and comment rulemaking procedures pursuant to APA were not followed here, too. Isn't that just then an obvious violation of the APA? And how could the acting secretary rely on a litigation risk assessment that DACA is illegal because they didn't comply, President Obama didn't comply with the APA, but her rescission of it is okay even though she didn't comply with the APA? Your Honor, the short answer to that is there's no way they can prevail on that sort of argument because if the rescission of DACA violates the APA for failing to go through notice and comment, then so, too, does DACA itself. And since what they actually want is DACA to be still in effect, they're not challenging the rescission of DACA in the air. They're challenging the rescission of DACA because they want DACA to continue. So they can't make an argument that the rescission is invalid that necessarily implies that the adoption was invalid. Right, but taking that one step further, even if they don't want to argue that it's invalid, it still shows it's arbitrary because it didn't comply with the procedures either, yet it was relying on failure to comply with the procedures. So it's well aware that there are procedures to be followed. So, again, I have two points, which is even if that's right, it necessarily implies that DACA itself is invalid, too. So I don't see how it gets them anything. But the second point I would say is that we think that there are strong arguments that even though the adoption of DACA required notice and comment, the rescission of DACA does not require notice and comment. The Fifth Circuit's rationale for why the adoption of DACA required notice and comment was that it was basically creating a substantive entitlement. If you rescind DACA and go back to the normal situation of prosecutorial discretion, you're just going back to a situation that was the status quo. We don't think you need to go through notice and comment in those circumstances. Well, I don't know about that. It just perplexed me in reading these materials. Those are issues that certainly aren't presented in this mandamus petition. They are presented in both our motion to dismiss and their PI motion below. I have a question about the discovery. I know at the end of your brief you asked for a stay of all discovery. But since there's been no discovery orders issued by the district court and certainly none are in front of us, how can we even address remandamus to those? I have two points on that, Your Honor. Our arguments about the administrative record equally apply to discovery insofar as the discovery is in service of their APA arbitrary and capricious claims. For their constitutional arguments, we have a separate argument, and I agree that technically the district court has not quite yet ruled because he just said he would rule once the magistrate judge ruled and the magistrate judge has ruled. But since the issue is already here, it's already fully briefed on both sides, and the arguments are basically the same, namely, that you can't get into discovery or any sort of extra record evidence unless there is strong, clear evidence of bad faith or impermissible motive, which they do not have. The discovery just is not proper for essentially the same reasons all the administrative record supplementation is not proper. Counsel, Judge Gould, if I could ask a question. I'll apologize because I think you might be over time, so I'm hoping Judge Wardlock can indulge me here. Of course. On that State Farm case, as I recall, one of the grounds the Supreme Court gave for when something is arbitrary and capricious is if an agency entirely fails to consider an important part of the problem. So I'd like to know how that works or applies. We have it all here. If the agency says the only problem from our point of view was litigation risk, that's all we considered and this is all the record is, but the plaintiffs are saying no, another important part of the problem is the impact on society in various ways and if the agency didn't consider that important part of the problem, that's arbitrary and capricious. So in a case like this, does that consideration apply? That will be the precise argument that the parties dispute on the underlying merits of the case. They will make exactly the argument you articulated. Our response will be that given that it was inevitable that the Texas court and the Fifth Circuit were going to strike down DACA, the impacts that they're concerned about were always going to happen, so the only question was whether they were going to happen immediately through a nationwide injunction or whether it would be an orderly wind-down period. Now, courts may agree or disagree with our argument on that and if they disagree, then there might be an arbitrary and capricious problem and if they agree, we win on the merits. But critically, for present purposes, that can be adjudicated on the administrative record we have provided because we have given our explanation, we have said what factors we considered and you could tell what factors we didn't consider. There is simply no reason they need to ask for all the underlying materials in DHS and DOJ, let alone the White House, to determine that we didn't consider something. They know that we didn't consider it any more than it's said in the order and whether that's arbitrary and capricious can be determined on the record that's been provided. So that's the, to sort of turn to the more general point, I think what's critical to focus on here is what are, they keep saying that they need the whole record and saying that the stuff that they're asking for is somehow relevant to their APA claims and I just can't understand what that rationale is. I can only think of three possibilities and they've hinted at all of them today. The first is the argument that Judge Gould just suggested that there might be some factors that weren't considered and that doesn't work for the reason I just said. If it wasn't considered, then the court can rule based on the record we provided. The second possibility is that there is evidence in the record that contradicts the stated rationale. But counsel didn't really embrace that argument today because I think he recognizes it doesn't work because it's not relevant in an arbitrary and capricious challenge to a legal decision whether someone else in the agency disagreed with that. I didn't hear him to dispute that. No one thinks that the NLRB has to submit their bench memos in cases even if it's an informal adjudication. And then the third possibility is if there's evidence of bad faith. But they didn't argue that. They in fact admitted that they haven't yet argued that and they've admitted that they're doing exactly what the D.C. Circuit said is improper, which is trying to get record evidence to support their bad, extra record evidence to support their bad faith argument rather than what is required, which is confining themselves to the true record unless they have evidence of bad faith up front. The last point I would like to, I should clarify on this because I think it's important to offer, you've asked this question a couple of times. We are not saying that every single document in the agency is deliberative. What we are saying is the record that we based our decision on is what we have provided and anything else is either deliberative or not part of the record. So take, for example, their lead example from the Privilege Log of a Washington Post article. It is just clearly irrelevant to the record of the decision that was made that the acting secretary read a Washington Post article. The Washington Post article wasn't talking about litigation. Yeah, but hang on. So I guess I thought, I'm glad you raised this point because I thought you were saying that everything that the acting secretary had before her when she made this decision, that there basically is no factual material other than the kind of legal advice she was getting from subordinates and that all of that is going to be swept up within the deliberative process privilege. I thought that's what you had said in response to Judge Wardlaw's question. So are you now backtracking from that? So I want to be very clear because I thought that there might be some confusion on this. So with respect to the acting secretary, I think it is true that virtually everything, as I mentioned, I think there is an example like a couple of newspaper articles and things like that. But how is a newspaper article privileged? It's completely factual. The reason it's on the privilege log, Your Honor, is because there are handwritten notes on it and the handwritten part is privileged. I agree with you that the underlying newspaper article is not privileged. Our point there is that the underlying newspaper article is simply not part of the record on which this decision was based. The fact that an agency decision maker read a newspaper article about the decision that was at issue does not make it part of the record. And I think to take a step back, Your Honor, as Your Honor asked before, the APA has rules that govern what is the record in formal proceedings. The APA doesn't specify what the rules are in an informal proceeding. And under Vermont Yankee, that means that agencies get to make at least the first call in terms of how they establish their procedures and what record they will base their decision on. Now, to be sure, there are constraints on that and it's possible that their decisions might be arbitrary and capricious. And if this was a case where the decision turned on factual evidence and if it were the case that the acting secretary had factual evidence before her that contradicted her rationale and didn't put it in, then I can maybe understand their argument. But what we're talking about here is a legal judgment about litigation. Okay, so let me make sure I understand this. So you're saying that by virtue of the reasons given by the acting secretary, that in effect defines the scope of the record? And so, I mean, what I'm just trying to puzzle out is, your position is that let's say the acting secretary commissioned all sorts of factual studies and analyses that would not be within the deliberative process privilege. And she most definitely considered all of that in making her decision. But the grounds for the decision she ultimately reached had solely to do with the asserted grounds here, litigation risk. You're saying that in that scenario, the four corners of the administrative record do not include all the factual material? Right, because that is not the record on which she based her decision. And to make it simpler, imagine that the only basis of the decision, which I don't think is true, but it was that DACA was flat-out illegal, clearly illegal. And let's say the court ultimately agreed. Well, then obviously all that factual stuff would be irrelevant because once it's determined to be illegal, all the factual stuff sort of just falls besides the weight. And so similarly here, when it's a litigation risk decision, if the litigation risk assessment was not arbitrary and capricious, if that was a reasonable interpretation of the case law in light of the decisions and the attorney general's opinion, then the fact that there are additional facts that she could have based her decision on but did not base her decision on doesn't make it arbitrary and capricious. And as I said earlier to Judge Gould, I think in this circumstance, it was quite reasonable, though this is the underlying merits issue that we're going to end up having a dispute about. All right, counsel, you need to wrap it up. If I could make one last point. It was a short last point because you're 10 minutes over now. Thank you, Your Honor. The last point I would say is in terms of the harms here, I think Your Honor was exactly right that our position isn't going to create any harms because if we leave stuff out, we will just lose under APA cases. But their position would be a severe intrusion on the ability of the government to both act and to deliberate. Their position is that any time the government makes a legal decision, everyone who advised the Secretary has to submit all of the material that they had that's relevant, both within the agency and even into the White House. That's a severe intrusion, and it would create a grave deterrent on having any sort of written product, especially a written product that might disagree on legal questions. All right. Thank you, counsel. Thank both counsel for excellent arguments, and this session of the court is adjourned for today. All rise.
judges: Wardlaw, Gould, Watford